**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MMA LAW FIRM, PLLC, | § | Case No. 24-31596 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| _____ | § | |
| | § | |
| MMA LAW FIRM, PLLC, | § | |
| | § | |
| Plaintiff and Counterclaim Defendant, | § | |
| | § | |
| v. | § | Adversary No. 24-03212 |
| | § | |
| ALLIED WORLD INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant and Counterclaim Plaintiff. | § | |

**ALLIED WORLD INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

## <u>TABLE OF CONTENTS</u>

I.  FACTUAL BACKGROUND ................................................................................................ 1

   A. The Allied World professional liability policies grant all Insureds, including non-Debtor Insureds, access to the proceeds............................................................................................ 1

   B. Allied World accepted coverage for nine lawsuits against the Insureds, including MMA and its former attorneys and employees. ..................................................................................... 4

     *1.  The Concluded Civil Proceedings* ................................................................................. 5

     *2.  The Pending Civil Proceedings* ..................................................................................... 6

   C. MMA failed to pay any amounts within the $25,000 Retention for each of the Concluded and Pending Civil Proceedings. ............................................................................................. 7

   D. MMA incorrectly contends that the policy proceeds are property of the estate. ................... 8

II.  ARGUMENT ................................................................................................................... 9

   A. If the Court concludes that the District Court's Orders dismissing MMA's Complaint did not also resolve Allied World's competing counterclaims, then the Court should enter a declaration permitting Allied World to negotiate and pay covered loss under the Policies. 10

III. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Board of Sch. Comm'rs v. Jacobs*,
  420 U.S. 128 (1975) ……………………………………………………………………9

*Butner v. United States*,
   440 U.S. 48 (1979) .......................................................................................... 12

*Great Am. Ins. Co. v. Primo*,
  512 S.W.3d 890 (Tex. 2017) .......................................................................... 12

*HM Int'l, L.L.C. v. Twin City Fire Ins. Co.*,
  13 F.4th 356 (5th Cir. 2021) .......................................................................... 12

*In re Adelphia Commc'ns Corp.*,
  285 B.R. 580 (Bankr. S.D.N.Y. 2002) ......................................................... 11

*In re Adelphia Commc'ns Corp.*,
  302 B.R. ........................................................................................................... 14

*In re Beach First Nat'l Bancshares, Inc.*,
  451 B.R. 406 (Bankr. D.S.C. 2011) .............................................................. 13

*In re Boston Reg'l Med. Ctr., Inc.*,
  285 B.R. 87 (Bankr. D. Mass. 2002)............................................................. 14

*In re Chirillo*,
  84 B.R. 120 (Bankr. N.D. Ill. 1988).............................................................. 11

*In re CyberMedica, Inc.*,
  280 B.R. 12 (Bankr. D. Mass. 2002)........................................................ 13, 14

*In re DePugh*,
  409 B.R. 125 (Bankr. S.D. Tex. 2009) ......................................................... 10

*In re Directory Distrib. Assocs., Inc.*,
  566 B.R. 869 (Bankr. S.D. Tex. 2017) ......................................................... 10

*In re Downey Fin. Corp.*,
  428 B.R. 595 (Bankr. D. Del. 2010) ............................................................. 13

*In re Enron Corp.*,
    2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002)................................................... 11

*In re Hardin*,
    375 B.R. 506 (Bankr. E.D. Wis. 2007) .................................................................. 12

*In re Hoku Corp.*,
    2014 WL 1246884 (Bankr. D. Idaho Mar. 25, 2014)................................... 11, 13, 14

*In re Kunz*,
    236 F. App'x 72 (5th Cir. 2007) ........................................................................... 10

*In re Locateplus Holdings Corp.*,
    2011 WL 5240279 (Bankr. D. Mass. Oct. 31, 2011) ......................................... 13, 14

*In re MF Glob. Holdings Ltd.*,
    515 B.R. 193 (Bankr. S.D.N.Y. 2014)................................................................... 13

*In re Mila, Inc.*,
    423 B.R. 537 (B.A.P. 9th Cir. 2010) ............................................................... 11, 14

*In re OGA Charters, L.L.C.*,
    901 F.3d 599 (5th Cir. 2018) ................................................................................. 9

*In re Pasquinelli Homebuilding, LLC*,
    463 B.R. 468 (Bankr. N.D. Ill. 2012)..................................................................... 13

*In re Petters Co.*,
    419 B.R. 369 (Bankr. D. Minn. 2009) ................................................................... 12

*In re TierOne Corp.*,
    2012 WL 4513554 (Bankr. D. Neb. Oct. 2, 2012)........................................ 11, 12, 13

*Johnston v. Dexel*,
    373 F. Supp. 3d 764 (S.D. Tex. 2019).................................................................. 10

*Med. Ctr. Pharmacy v. Holder*,
    634 F.3d 830 (5th Cir. 2011) ............................................................................... 10

*Prince v. CMS Wireless LLC*,
    2012 WL 1015001 (E.D. Tex. Mar. 22, 2012) ....................................................... 11

*Rodriguez v. Fed. Deposit Ins. Corp.*,
    589 U.S. 132 (2020)............................................................................................ 12

*SEC v. First Fin'l Grp. of Tex.*,
　645 F.2d 429 (5th Cir. 1981) ........................................................................... 10

*Sec. & Exch. Comm'n v. Narayan*,
　2017 WL 447205 (N.D. Tex. Feb. 2, 2017) .................................................. 11, 13, 14

*Sec. & Exch. Comm'n v. Faulkner*,
　2018 WL 2761850 (N.D. Tex. June 6, 2018) ........................................................ 14

*Tex. Farmers Ins. Co. v. Soriano*,
　881 S.W.2d 312 (Tex. 1994) ............................................................................ 14

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
　549 U.S. 443 (2007) ....................................................................................... 12

**Statutes**

11 U.S.C. § 362 ................................................................................................. 10, 16

11 U.S.C. § 502 ................................................................................................. 12, 13

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, Allied World Insurance Company ("Allied World"), by and through its undersigned counsel, requests that the Court enter summary judgment against Defendant MMA Law Firm, PLLC ("MMA" or "Debtor"). The District Court previously dismissed MMA's Complaint against Allied World, concluding as a matter of law that the proceeds of Allied World's malpractice policies are not property of MMA's estate. The District Court's dismissal orders likewise resolved Allied World's competing counterclaims for judicial declarations that the automatic stay does not prevent Allied World from paying covered loss under the policies. If the District Court's orders are determined not to be dispositive of those competing counterclaims, then Allied World requests summary judgment on those counterclaims for the same reasons stated in its pending, amended motion for relief from the automatic stay.

The only other pending claim or counterclaim is Allied World's request for a judicial declaration allowing Allied World's Proof of Claim. Allied World withdrew its Proof of Claim, and therefore, the related counterclaim is moot.

## I.   <u>FACTUAL BACKGROUND</u>

### A.  The Allied World professional liability policies grant all Insureds, including non-Debtor Insureds, access to the proceeds.

1.       Allied World issued separate professional liability insurance policies to McClenny Moseley & Associates, PLLC (now known as MMA Law Firm, PLLC) for the claims-made annual **Policy Periods**[1] of October 3, 2021, to October 3, 2022 (the "21-22 Policy"), and October 3, 2022, to October 3, 2023 (the "22-23 Policy"). A true and correct copy of the 21-22 Policy is attached as Exhibit A to the Declaration of Michael J. LeMoult (the "LeMoult Declaration"). A true and correct

---

[1] Words appearing in bold are defined terms in the Policies.

copy of the 22-23 Policy is attached as Exhibit B to the LeMoult Declaration. Except for the policy periods, the 21-22 and 22-23 Policies are, in all material respects, identical.

2.      Subject to all of their terms, conditions, and exclusions, each Policy potentially provides coverage up to a maximum aggregate limit of liability of $3 million, inclusive of **Claim Expenses**. Ex. A at Declarations, Item 3. Limits of Liability; Ex. B at pp. 2-3 (same); *see also* § V.A.1. ("The Limit of Liability set forth in Item 3.I. of the Declarations, is the **Insurer's** maximum liability under Insuring Agreement I. for all **Damages** and **Claim Expenses** resulting from each **Claim**.").

3.      Each Policy's Insuring Agreement states:

> The **Insurer** will pay on behalf of an **Insured**, all amounts in excess of the Retention shown in the Declarations, that an **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** first made during the **Policy Period** or any applicable Extended Reporting Period and reported in accordance with the terms of this Policy, for a **Wrongful Act**.
> …
> The **Insurer** shall have the right and duty to defend any **Claim** seeking **Damages** that are covered by this Policy and made against an **Insured** even if any of the allegations of the **Claim** are groundless, false or fraudulent.

Ex. A § I. INSURING AGREEMENT; Ex. B (same); *see also* § V.C.1. ("The **Insurer** shall have the right and duty to defend any **Claim** seeking **Damages** covered under this Policy. The **Insurer** shall select defense counsel for the investigation, defense or settlement of any **Claim** and the **Insurer** shall pay all reasonable **Claim Expenses** arising from the **Claim**.").

4.      The Policies define **Claim** to include: "any civil proceeding in a court of law … made to or against any **Insured** seeking to hold such **Insured** responsible for any **Wrongful Act**. …" Ex. A § III.C.2; Ex. B (same). **Insured** under the Policies is defined to include the **Named Insured** (MMA) and any lawyer or employee of the **Named Insured** but only in the performance

of or failure to perform **Legal Services** on behalf of the **Named Insured**. **Insured** also includes

the estate of any **Insured** after such **Insured's** death, insolvency or bankruptcy, but only to the

extent that such **Insured** would otherwise be provided coverage under the Policy. Ex. A § III.N.;

Ex. B (same).

5.      Covered loss under the Policies consists of **Claim Expenses** and **Damages**. **Claim**

**Expenses** means, in relevant part:

> reasonable fees, costs and expenses charged by attorneys retained or
> approved by the **Insurer** for a **Claim** brought against an **Insured**
> …. The determination by the **Insurer** as to the reasonableness of
> **Claim Expenses** shall be conclusive on all **Insureds**.

Ex. A § III.D.; Ex. B (same). The Policies define **Damages**, in relevant part, as: "the monetary

portion of any judgment, award or settlement …." Ex. A at Endorsement No. 3, amending § III.G.;

Ex. B (same).

6.      The Policies contain a priority of payments provision that requires **Claim Expenses**

to be paid before **Damages**. Condition V.A.4. of the Policies states: "**Claim Expenses** are part of

and not in addition to the Limit of Liability and shall reduce and may exhaust the Limit of Liability.

The Limit of Liability shall first be applied to **Claim Expenses** with the remainder, if any, being

the amount available to pay as **Damages**." Ex. A; Ex. B.

7.      The Policies include several conditions regarding MMA's obligation to pay the

$25,000 Retention for "each and every **Claim** under Insuring Agreement I." Ex. A, at Declarations,

Item 4.(a); Ex. B (same). Condition V.B.1. of the Policies states:

> With respect to the coverage provided under Insuring Agreement I.,
> the Insurer's obligation to pay **Damages**, including **Claim**
> **Expenses**, is in excess of the Retention set forth in Item 4.(a) of the
> Declarations, which Retention shall apply to each and every
> **Claim**." Ex. A; Ex. B.

Condition V.B.5. of the Policies also states:

> It is the Named Insured's responsibility to pay **Damages**, **Claim Expenses** or any other amounts payable under this Policy up to the amount of the Retention. The Insurer shall only be liable to pay, subject to the Limit of Liability provisions stated in this Section, for **Damages**, **Claim Expenses** or any other amounts payable under this Policy in excess of such Retention and such Retention shall not be insured under this Policy.

Ex. A; Ex. B.

8.       Allied World has the discretionary right to settle covered **Claims** under the Policies. Condition V.C.2. of the Policies states: "The **Insurer** shall have the right to investigate and conduct negotiations and, with the **Insured's** consent, which shall not be unreasonably withheld, enter into a settlement of any **Claim** that the **Insurer** deems appropriate." Ex. A; Ex. B.

**B.   Allied World accepted coverage for nine lawsuits against the Insureds, including MMA and its former attorneys and employees.**

9.       Allied World received notices from the Insureds, including MMA, seeking coverage under the 21-22 and 22-23 Policies for numerous civil proceedings filed against them. LeMoult Decl. ¶4.

10.      With respect to nine of these lawsuits, Allied World agreed to pay **Claim Expenses** in accordance with its duty to defend under the 21-22 and 22-23 Policies, subject to a reservation of rights to limit or deny coverage pursuant to certain terms, conditions, and exclusions in the Policies. *Id.* ¶¶4-5. For these lawsuits, Allied World either assigned defense counsel to represent the **Insureds** or approved the **Insureds'** preferred defense counsel. *Id.* ¶5. Accordingly, defense counsel for the **Insureds** have submitted invoices containing their fees and costs to Allied World. *Id.* ¶6. Allied World has reviewed the invoices for compliance with its billing guidelines and deducted amounts that Allied World determined were unreasonable and/or unnecessary. *Id.* ¶7.

Allied World made pre-petition payments for **Claim Expenses** consistent with its obligation under the Policies. *Id.*

### 1. *The Concluded Civil Proceedings*

11.     Allied World paid covered loss under the 22-23 Policy for three lawsuits in which Allied World agreed to provide a defense to the **Insureds**, subject to a reservation of rights. *Id.* These lawsuits, which are no longer pending (collectively, the "Concluded Civil Proceedings"), are the following:

- *Melvin Addison et al. v. Richard William Huye et al.*, 2023-1252, Parish of Calcasieu, Louisiana (the "Addison Suit");
- *Khang Tran v. McClenny Moseley & Associates, PLLC et al.*, 2023-1158, Parish of Orleans, Louisiana (the "Tran Suit"); and
- *Henry Mills v. McClenny Moseley & Associates, PLLC et al.*, 2023-4210, Parish of Orleans, Louisiana (the "Mills Suit").

12.     In the Concluded Civil Proceedings, the **Insured** defendants (individuals and MMA) were represented by Phelps Dunbar LLP ("Phelps Dunbar"), Katie Lasky Law LLC ("KL Law"), Forman Watkins & Krutz LLP ("Forman Watkins"), Stanley Reuter Alford Owen Munson & Paul, LLC, Deutsch Kerrigan LLP ("Deutsch Kerrigan"), and Christovich & Kearney LLP ("Christovich Kearney"). *Id.* ¶5. Before MMA filed this bankruptcy proceeding (the "Bankruptcy Proceeding"), Allied World paid **Claim Expenses** for invoices issued by defense counsel for these lawsuits. *See id.* ¶7. Allied World has not paid additional defense invoices for these lawsuits after MMA filed this bankruptcy case because MMA objected to such payment. *Id.*

13.     Before MMA filed the Bankruptcy Proceeding, Allied World paid $30,000 in **Damages** to settle the Mills Suit. *Id.* ¶9. The plaintiffs in the Griffin and Tran Suits dismissed their actions without any settlement payment from Allied World. *Id.*

### 2. *The Pending Civil Proceedings*

14.     Six lawsuits remain pending for which Allied World agreed to provide a defense to **Insureds**—including but not limited to MMA—subject to a reservation of rights. *Id.* ¶¶4-5, 9. These actions (collectively, the "Pending Civil Proceedings") are the following:

- *Access Restoration Services US, Inc. v. Starlight Studios, LLC*, 2023-01621, Parish of Orleans, Louisiana (the "Access Restoration Suit");
- *Makkah Corporation v. McClenny Moseley & Associates, PLLC et al.*, 2023-2874, Parish of Calcasieu, Louisiana (the "Makkah Suit");
- *Gloria Williams v. Louisiana Insurance Guaranty Association et al.*, 2023-07180, Parish of Orleans, Louisiana (the "Williams Suit");
- *Christine Griffin v. Allied World Insurance Company et al.*, 2023-10504, Parish of Orleans, Louisiana (the "Griffin Suit");
- *John Angelos v. Progressive Property Insurance Company et al.*, C-725010 "30," Parish of East Baton Rouge, Louisiana (the "Angelos Suit"); and
- *Linda Wilhelm v. Allied World Insurance Company et al.*, 2023-11357, Parish of Orleans, Louisiana (the "Wilhelm Suit").

15.     In the Pending Civil Proceedings, the **Insured** defendants (individuals and MMA) have been represented by Phelps Dunbar, Forman Watkins, KL Law, Deutsch Kerrigan, Christovich Kearney, Irwin Fritchie Urquhart Moore & Daniels LLC, and Frilot LLC. *Id.* ¶5.

16.     Allied World accepted coverage, subject to a reservation of rights under the 21-22 Policy, for the third-party claims asserted by Starlight Studio, LLC  in the Access Restoration Suit. *Id.* Before MMA filed the Bankruptcy Proceeding, Allied World paid **Claim Expenses** for the Access Restoration Suit. *See id.* ¶7. Post-petition, Allied World has not paid additional defense invoices for the Access Restoration Suit because MMA objected to such payment. *Id.*

17.     The Access Restoration Suit is the only one of the Concluded and Pending Civil Proceedings that Allied World accepted for coverage under the 21-22 Policy. *Id.* ¶5. Allied World accepted the remaining lawsuits for coverage under the 22-23 Policy. *Id.* Before MMA filed the Bankruptcy Proceeding, Allied World paid some **Claim Expenses** pursuant to the attorney

invoices for these suits. *Id.* ¶7. Post-petition, Allied World has not paid any additional defense invoices for these suits because MMA objected to such payment. *Id.*

18.     The plaintiff in the Makkah Suit agreed to release all **Insured** defendants in exchange for a $200,000 payment from the 22-23 Policy. *Id.* ¶10. The plaintiff in the Griffin Suit agreed to release all **Insured** defendants in exchange for an $85,000 settlement payment under the 22-23 Policy plus court costs. *Id.* The plaintiff in the Wilhelm Suit demanded $148,120 plus court costs to settle. *Id.* Allied World would accept these demands and settle these three lawsuits, but has been unable to do so because of MMA's objection. *Id.*

19.     During the Bankruptcy Proceeding, one of the defense firms withdrew as counsel of record in Pending Civil Proceedings because the dispute with MMA regarding the bankruptcy stay prevented Allied World from paying that firm's bills for work performed on behalf of the **Insureds**. *Id.* ¶8.

### C. MMA failed to pay any amounts within the $25,000 Retention for each of the Concluded and Pending Civil Proceedings.

20.     MMA did not pay any amount within its $25,000 per suit retention obligation for any of the three Concluded Civil Proceedings. Allied World's Counterclaim, D.E. 5, ¶43; MMA's Ans. to Counterclaim, D.E. 17, ¶43. MMA likewise did not pay any amount within its $25,000 per suit retention obligation for any of the six Pending Civil Proceedings. Allied World's Counterclaim, D.E. 5, ¶59; MMA's Ans. to Counterclaim, D.E. 17, ¶59.

21.     On August 13, 2024, Allied World filed its Proof of Claim (No. 42) in the Bankruptcy Proceeding. The Proof of Claim is based on MMA's failure to pay amounts within the $25,000 per-suit retention obligation. Allied World withdrew its Proof of Claim.

**D.  MMA incorrectly contends that the policy proceeds are property of the estate.**

22.     On July 26, 2024, Allied World filed its initial Motion for Relief from the Automatic Stay, to the Extent Applicable (D.E. 205 in Bank. No. 24-31596), requesting permission to pay **Claim Expenses**, negotiate settlements (as appropriate), and pay **Damages** incurred in the above-referenced Civil Proceedings. MMA filed an opposition, requesting that the Court determine that the Policy proceeds are property of the estate. MMA's Resp. in Opp., D.E. 248, in Bankr. No. 24-31596. On August 26, 2024, the Bankruptcy Court denied without prejudice Allied World's motion via a minute order.

23.     On October 10, 2024, MMA filed this adversary proceeding, asserting counts for a declaration that the Policy proceeds are property of the estate and for a related turnover of the proceeds. MMA's Compl., D.E. 1. On November 22, 2022, Allied World filed its Counterclaim (D.E. 5). Counts I and II of the Counterclaim are competing counterclaims for declaratory relief that the proceeds are not property of the estate, or alternatively, that cause exists to permit Allied World to pay **Claim Expenses** incurred in the Concluded and Pending Civil Proceedings and to negotiate settlements and pay **Damages** incurred in the Proceedings. Allied World's Counterclaim, D.E. 5, ¶¶61-73. Count III of the Counterclaim seeks a declaration allowing Allied World's Proof of Claim. *Id.* ¶¶74-85. That Count is moot because Allied World withdrew the Proof of Claim.

24.     On April 25, 2025, the District Court held that MMA's Complaint against Allied World failed to state a claim upon which relief can be granted because the Policy proceeds are not property of the estate as a matter of law. Order, D.E. 5, in Case No. 4:25-cv-0991. On June 4, 2025, the District Court denied MMA's motion for reconsideration, rejecting MMA's argument that *In re OGA Charters, L.L.C.*, 901 F.3d 599 (5th Cir. 2018) is applicable to the estate's claim to the Policy

proceeds. Order, D.E. 8, in Case No. 4:25-cv-0991. For the Court's convenience, the District Court's Orders are Exhibits 1 and 2 to this Motion.

25.    Out of an abundance of caution, Allied World filed an Amended Motion for Relief from the Automatic Stay, to the Extent Applicable in the Bankruptcy Proceeding. In that Amended Motion, Allied World requests that the Court enter an order allowing it to pay covered loss under the Policies because of the District Court's dismissal Orders. Alternatively, Allied World requests an order for the same relief because "cause" exists under 11 U.S.C. § 362(d), even if the stay were arguably applicable (it is not).

## II. **<u>ARGUMENT</u>**

26.    The District Court's Orders dismissing MMA's Complaint are the law of the case. The District Court's Orders also resolved Allied World's competing counterclaims for declaratory relief that the Policy proceeds are not property of the estate. If those Orders are determined not to be dispositive of those competing counterclaims, then Allied World requests summary judgment on those counterclaims for the same reasons stated in Amended Motion for Relief from the Automatic Stay, to the Extent Applicable.  Summary judgment is appropriate because the pleadings and evidence show "that there is no genuine dispute as to any material fact and [Allied World] is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

27.    There are no other pending claims or counterclaims that are justiciable, as Allied World withdrew its Proof of Claim, and therefore, its related counterclaim is moot. A claim is moot when a case or controversy no longer exists between the parties. *Board of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129 (1975).

28.    Allied World requests that the Court take judicial notice of the pleadings in this adversary proceeding; the District Court's Orders dismissing MMA's Complaint; and the briefs,

evidence, and minute order in the Bankruptcy Proceeding relating to Allied World's requested

relief from the automatic stay. *See SEC v. First Fin'l Grp. of Tex.*, 645 F.2d 429, 433 n.6 (5th Cir.

1981); *Johnston v. Dexel*, 373 F. Supp. 3d 764, 784-85 (S.D. Tex. 2019) (citations omitted).

**A. If the Court concludes that the District Court's Orders dismissing MMA's Complaint did not also resolve Allied World's competing counterclaims, then the Court should enter a declaration permitting Allied World to negotiate and pay covered loss under the Policies.**

29.     Counts I and II in Allied World's Counterclaim request declarations that the

proceeds of the Policies are not property of MMA's estate, or alternatively, that cause exists to grant

relief from the automatic stay, to the extent applicable, to permit Allied World to pay **Claim**

**Expenses** and to negotiate settlements and pay **Damages** in the Concluded and Pending Civil

Proceedings. Allied World's Counterclaim, D.E. 5, ¶¶61-73.

30.     The District Court's Orders dismissing MMA's Complaint are law of the case.[2]

Those Orders also resolved Allied World's competing Counts I and II in the Counterclaim.

31.     If those Orders are determined not to be dispositive of those competing

counterclaims, then Allied World requests that the Court enter a declaration permitting Allied World

to pay covered loss in accordance with the alternative relief requested in Counts I and II of the

Counterclaim. The grounds for this declaration are stated in the pending Amended Motion for Relief

from the Automatic Stay, to the Extent Applicable. For the Court's convenience, the arguments from

---

[2] *See, e.g.*, *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (citations and quotations omitted) ("[A]n issue of law decided on appeal may not be reexamined by the district court on remand or by the appellate court on a subsequent appeal."); *see also In re Kunz*, 236 F. App'x 72, 73 (5th Cir. 2007) (holding that the law-of-the-case doctrine applied to an appeal from the bankruptcy court to the district court); *In re Directory Distrib. Assocs., Inc.*, 566 B.R. 869, 877 (Bankr. S.D. Tex. 2017) (Bohm, J.) (citing *In re DePugh*, 409 B.R. 125, 131, 131 n.5 (Bankr. S.D. Tex. 2009) ("this Court is thus bound by [District Judge Andrew S. Hanen's] decision" because a "decision from the District Court in the Southern District of Texas is binding on a Bankruptcy Court in the Southern District of Texas").

that Amended Motion are restated below. To the extent that the Court considers these arguments in

deciding this Motion for Summary Judgment, the voluminous evidence filed in support of the

Amended Motion for Relief from the Automatic Stay, to the Extent Applicable is not refiled here

and is subject to the above request for judicial notice. There are no genuine disputes of material fact

relating to this evidence of the attorney invoices submitted for the Civil Proceedings and the

settlement demands in the same. *See, e.g.*, Decl. of Melissa Lessell; Decl. of Catherine E. Lasky.

32.     As to the alternative relief requested in Counts I and II of the Counterclaim, the

Court should consider the relative harms to the individual **Insureds** defending the Pending Civil

Proceedings and their defense counsel.[3] Even if the Policy proceeds were considered to be property

of the estate notwithstanding the District Court's Orders, the harm to the individual **Insureds** and

their counsel establishes ample "cause" for relief from the stay.[4]

---

[3] *See, e.g.*, *Prince v. CMS Wireless LLC*, No. 4:11-CV-438, 2012 WL 1015001, at *4 (E.D. Tex. Mar. 22, 2012) (quoting *In re Chirillo*, 84 B.R. 120, 123 (Bankr. N.D. Ill. 1988)) ("'Cause' may exist whenever the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors."); *In re Adelphia Commc'ns Corp.*, 285 B.R. 580, 599 (Bankr. S.D.N.Y. 2002) ("The Court believes that it is appropriate at this juncture to authorize the Insurers to advance defense costs in a way that would at least initially meet the needs and concerns of director and officer insureds…."), *vacated and remanded on other grounds*, 298 B.R. 49 (S.D.N.Y. 2003).

[4] *See, e.g.*, *In re Mila, Inc.*, 423 B.R. 537, 543 (B.A.P. 9th Cir. 2010) ("We decline the Trustee's invitation to render an opinion on this issue [(whether the policy proceeds are property of the estate)] because it is not essential to our decision here.");  *In re Hoku Corp.*, No. BR 13-40838-JDP, 2014 WL 1246884, at *4 (Bankr. D. Idaho Mar. 25, 2014) ("Assuming, without deciding, the proceeds of the Policy are property of the bankruptcy estate,[] the Court concludes that good cause has been established by the Movants under § 362(d) for relief [from] the automatic stay."); *In re TierOne Corp.*, No. BK10-41974-TLS, 2012 WL 4513554, at *2 (Bankr. D. Neb. Oct. 2, 2012) ("[T]he issue of whether the policies are property of the bankruptcy estate is irrelevant to the stay relief motion," because the insured persons were entitled to priority under the policy); *In re Enron Corp.*, No. 01-16034 (AJG), 2002 WL 1008240, at *1 (Bankr. S.D.N.Y. May 17, 2002) ("The automatic stay hereby is lifted, to the extent applicable, to permit the parties to the D & O Policy to exercise whatever contractual rights they may have under the D & O Policy …."); *see also Sec. & Exch. Comm'n v. Narayan*, No. 3:16-CV-1417-M, 2017 WL 447205, at *9 (N.D. Tex. Feb. 2, 2017) (permitting advancement of defense costs to insured persons without deciding whether insurance proceeds were part of the receivership estate).

33.     The filing of the Bankruptcy Proceeding did not and cannot alter the pre-existing contractual rights and obligations under the 21-22 and 22-23 Policies.[5] Under Texas law, the Policies' terms cannot be rewritten. *See HM Int'l, L.L.C. v. Twin City Fire Ins. Co.*, 13 F.4th 356, 359 (5th Cir. 2021) (citing and quoting *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017)). The Policies' terms: (a) grant all **Insureds** (including the non-Debtor **Insureds**) access to proceeds to fund a meaningful defense in the above-referenced **Claims**; (b) require payment of **Claim Expenses** before **Damages**; and (c) permit Allied World to exercise its discretion to attempt to settle any **Claim** that Allied World deems appropriate. *See supra* § I.A.

34.     Based on the contracts and undisputed facts, "cause" exists to permit Allied World to pay **Claim Expenses** incurred by the **Insureds** in the Concluded and Pending Civil Proceedings. As detailed above, the **Insureds** (including the non-Debtor individuals who are named defendants) have a present need for the payment of all **Claim Expenses** incurred by them. If Allied World is precluded from paying their defense counsel, the **Insureds** will be left without counsel, and their ability to defend the Pending Civil Proceedings will be prejudiced. For their part, defense counsel have been harmed by Allied World's inability to pay their outstanding invoices for services previously provided, and that harm will continue if the Court does not grant the requested relief.

---

[5] *See, e.g.*, *Rodriguez v. Fed. Deposit Ins. Corp.*, 589 U.S. 132, 137 (2020) (quoting *Butner v. United States*, 440 U.S. 48, 54 (1979)) ("As this Court has long recognized, 'Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.'"); *In re Hardin*, 375 B.R. 506, 510 (Bankr. E.D. Wis. 2007) (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007)) ("Bankruptcy law does not create new property rights, and therefore, nonbankruptcy law determines the interests in the policy."); *In re TierOne Corp.*, 2012 WL 4513554, at *3 ("The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate"); *In re Petters Co.*, 419 B.R. 369, 376 (Bankr. D. Minn. 2009) ("The case law recognizes that any individual insured has a contractually-distinct status that runs directly between itself and the insurer. This makes the right to receive payment on a covered claim the property of that insured itself.").

Numerous other courts have recognized that this type of harm to individual insureds and their counsel constitutes "cause" under 11 U.S.C. § 362(d).[6] In addition, courts routinely enforce priority of payments provisions when balancing the harm (or potential harm) to interested parties.[7]

35.     "Cause" also exists to permit Allied World to negotiate settlements and pay **Damages**, as appropriate, on behalf of **Insureds** in the Pending Civil Proceedings. If one of those Proceedings can be resolved by a reasonable settlement that results in the payment of **Damages** (like the above-referenced demands in the Makkah, Griffin, and Wilhelm Suits), **Insureds** should

---

[6] *See, e.g.*, *In re Hoku Corp.*, 2014 WL 1246884, at *5 ("Trustee's argument that each of the Movants ought to be required to show that personally paying the defense costs is a burden, absent any identifiable potential harm to the estate, is not persuasive."); *In re Pasquinelli Homebuilding, LLC*, 463 B.R. 468, 474 (Bankr. N.D. Ill. 2012) ("[T]he Court is not inclined to prohibit [the insurer] from exercising its contractual rights to pay defense costs. The Court is not convinced that any prejudice will inure to the Estate at this time if the Pasquinelli Insureds are allowed to seek coverage of their defense costs."); *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D.S.C. 2011) ("[The insured persons] cannot now be prevented from using the Policy for its intended purpose simply because Debtor wishes to save the policy limit for any potential claims of its own."); *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010) (concluding, alternatively, if policy proceeds were property of the estate, requiring insured persons to pay defense costs would constitute hardship, and thus, there would be cause to lift the automatic stay); *In re CyberMedica, Inc.*, 280 B.R. 12, 18-19 (Bankr. D. Mass. 2002) (granting stay relief because insured persons would suffer irreparable harm "if prevented from exercising their rights to defense payments").

[7] *See, e.g.*, *Narayan*, 2017 WL 447205, at *7 ("The Policy, thus, appears to subordinate any claim that the Receiver may have for TTR's defense costs or derivative investigation expenses to the coverage for Movants and other individual insureds under Coverage A."); *In re Hoku Corp.*, 2014 WL 1246884, at *4 ("Further, Coverage A is paid first … and thus any claims under Coverage B, or beyond, would be subordinate to the coverage requested by the Movants."); *In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203 (Bankr. S.D.N.Y. 2014) ("That [priority of payment] provision requires that the Individual Insureds be advanced defense costs before other payments under the D & O Policies are satisfied."); *In re TierOne Corp.*, No. BK10-41974-TLS, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2012) ("While that may be true since the policies do provide indemnification and liability coverage to the Debtor, it is undisputed that such coverage is subordinate to the payment of covered claims for the directors and officers. The directors and officers are entitled to the Policy proceeds before any interest of the estate comes into play."); *In re Locateplus Holdings Corp.*, No. 11-15791-JNF, 2011 WL 5240279, at *3 (Bankr. D. Mass. Oct. 31, 2011) ("The policy expressly … provides that coverage of the defense costs of directors and officers has priority ….").

not have to continue to defend those Proceedings through trial and any appeal. Indeed, under Texas

law, Allied World is permitted to enter into a reasonable settlement even if it diminishes the

proceeds available to satisfy other claims. *See Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312,

315 (Tex. 1994).

36.     MMA purchased the Policies, in part, for the purpose of providing insurance

coverage to the non-Debtor individuals who are **Insureds**. There is no provision in the Policies

subordinating the individuals' contractual rights to those of MMA. If the Court denies the

requested relief, the harm to the other **Insureds** would outweigh any potential harm to Debtor,

which is speculative and remote.[8] To that point, the limited universe of covered **Claims** is already

known to MMA because of the Insuring Agreement's claim-made-and-reported requirements. *See*

---

[8] *See, e.g., In re Mila, Inc.*, 423 B.R. at 545 ("[The insured person's losses were clear, immediate, and ongoing … the likelihood that Sapp would exhaust the $1 million policy with his defense costs appeared to be remote."); *In re Hoku Corp.*, 2014 WL 1246884, at *5 ("In sum, the Court finds the Movants are incurring actual expense in defending the JH Kelly Action, and that such is a clear, immediate, and actual harm that greatly outweighs any speculative and hypothetical harm to the bankruptcy estate."); *In re Locateplus Holdings Corp.*, No. 11-15791-JNF, 2011 WL 5240279, at *3 (Bankr. D. Mass. Oct. 31, 2011) ("Absent relief from the automatic stay, [defense counsel] would be substantially and irreparably harmed as payment of fees and expenses for work it performed in reliance upon Coverage A would be exceedingly problematic."); *In re Adelphia Commc'ns Corp.*, 302 B.R. at 448, 453 (authorizing each insured person access to $300,000 in policy proceeds, even though it depleted limits, because it did not threaten the debtor's reorganization); *In re CyberMedica, Inc.*, 280 B.R. at 18-19 ("[T]here does not appear to be an immediate risk of the D&O policy's two million dollars being depleted"); *In re Boston Reg'l Med. Ctr., Inc.*, 285 B.R. 87, 98 (Bankr. D. Mass. 2002) (authorizing payments of expert costs even though total covered claims could exceed policy limits); *see also Sec. & Exch. Comm'n v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 2761850, at *6 (N.D. Tex. June 6, 2018) (concluding that insured persons were entitled to advancement of defense costs where insured persons' counsel depended on payment of policy proceeds and that without advancement the insured persons' ability to defend themselves would likely have been substantially impaired); *Narayan*, 2017 WL 447205, at *6-7 (concluding that insured persons' need for policy proceeds to fund defense in ongoing litigation greatly outweighed speculative harm to receivership estate relating to potential distribution to claimants against the estate).

14

Ex. A § I. INSURING AGREEMENT; Ex. B (same). The requested relief poses no threat to MMA's proposed reorganization.

37.     Accordingly, if the Court concludes that the District Court's Orders dismissing MMA's Complaint did not also resolve Counts I and II of the Counterclaim, then Allied World is entitled to a declaration regarding the alternative relief in those Counts permitting Allied World to pay **Claim Expenses** and to negotiate settlements and pay **Damages** in the Concluded and Pending Civil Proceedings.

### III. <u>CONCLUSION</u>

38.     For the foregoing reasons, if the Court concludes that the District Court's Orders dismissing MMA's Complaint did not also resolve Counts I and II of the Counterclaim, then Allied World respectfully requests that the Court grant summary judgment and declare that Allied World is permitted (but not required) to: (a) pay covered and outstanding **Claim Expenses** incurred in the Concluded and Pending Civil Proceedings and to pay covered **Claim Expenses** as incurred in the Pending Civil Proceedings in accordance with the terms of the 21-22 and 22-23 Policies; and (b) to finalize and negotiate settlements and to pay covered **Damages** in the Pending Civil Proceedings.

Dated: July 29, 2025          Respectfully submitted,

**WERNER AHARI MANGEL LLP**

By: */s/ Justin S. Levy*
Justin S. Levy
Tex. Bar No. 24078852
S.D. Tex. No. 1673395
8117 Preston Road, Suite 300
Dallas, TX 75225
(202) 599-1131
jlevy@wam.law

Leslie S. Ahari (admitted *pro hac vice*)

Oliver Sherman (admitted *pro hac vice*)
2112 Pennsylvania Ave., NW, Suite 200
Washington, DC 20037
(202) 599-1030
lahari@wam.law
osherman@wam.law

*Attorneys for Defendant and Counterclaim Plaintiff*
*Allied World Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 29, 2025, the foregoing document was served by e-mail on

the below-referenced counsel of record in this adversary proceeding:

Johnie Patterson
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208-1301
(713) 956-5577
(713) 956-5570 (fax)
jjp@walkerandpatterson.com

*Attorneys for Plaintiff and Counterclaim Defendant*
*MMA Law Firm, PLLC*

/s/ Justin S. Levy